IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY HUDSON-BRYANT, individually and on behalf of all others similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br><br>ONDERLAW, LLC<br><br><br><br>Defendant. | Case No.   25-cv-0244 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT ONDERLAW, LLC'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

i

## I. INTRODUCTION

This case admittedly involves a mistaken identity and a reassigned telephone number. But that mistake does not immunize OnderLaw's violation of a strict liability statute or change the fact that messages OnderLaw sent were telemarketing messages sent in plain violation of the TCPA, because they were sent to continue to encourage the recipient (the Plaintiff here) to use OnderLaw's legal services in pursuing a RoundUp mass tort claim, which OnderLaw would only receive payment on if the very document OnderLaw sought to have signed was signed. Because there is no "wrong number" exemption to the TCPA, the claims must be permitted to proceed.

## II. FACTUAL BACKGROUND

The original complaint in this matter was filed on February 27, 2025 against the Defendant, OnderLaw, LLC (ECF No. 1). The complaint alleges that the Plaintiff received at least two text messages and two calls from the Defendant, which were sent for the purposes to solicit her to fill out a "claim form" for a RoundUp claim. Subsequent discovery has revealed several additional facts, however. First, discovery revealed that the messages Plaintiff received were intended for a former client of OnderLaw, who had the telephone number in approximately 2018, before the telephone number was assigned to the Plaintiff. Second, the Plaintiff has uncovered at least nine additional text messages regarding the Plaintiff's claim, including text messages which reveal that the "claim form" was actually a document necessary to "continue participating in the litigation" and to include the Plaintiff in "settlement talks." According to the parties' contingent fee agreement, OnderLaw would receive a percentage of any recovery obtained as a result of signing such a claim form. Accordingly, the messages were sent for telemarketing purposes to the Plaintiff whose number was on the Do Not Call Registry and who had not consented to receive them, and as such, violated the TCPA. However, Defendant

1

OnderLaw claims that the messages were not sent for telemarketing purposes, and as such, did not violate the TCPA's Do Not Call Registry provisions, and has filed a Motion for Judgment on the Pleadings on this basis. This response follows.

## III.   LEGAL STANDARD

As Defendant correctly observes, a motion for judgment on the pleadings is treated identically to a motion under Rule 12(b)(6), considering whether the Plaintiff's complaint states a claim which is plausible on its face, and whether the Plaintiff's complaint states a claim which is sufficient as a matter of law, taking all factual inferences in the light most favorable to the Plaintiff. *Nat'l Fire Union Ins. Co. of Pittsburgh v. Cargill, Inc.*, 61 F.4th 615, 619 (8th Cir. 2023); *NanoMech, Inc. v. Suresh*, 777 F.3d 1020, 1023 (8th Cir. 2015). Unlike a motion to dismiss, however, which is, by nature, limited to the four corners of the Plaintiff's complaint, a motion for judgment on the pleadings permits the court to consider both the pleadings themselves, the materials embraced by them, exhibits attached thereto, and matters of public record. *Roe v. Nebraska*, 861 F.3d 785, 788 (8th Cir. 2017). As it applies the same standard, the pleadings may nevertheless survive even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

In this regard, judgment on the pleadings exists as a hybrid, applying the same purpose as summary judgment, but the same evidentiary standard as a motion to dismiss. "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002). However, a court should not grant judgment on the pleadings unless the material facts are undisputed, and the movant is entitled to judgment as a matter of law. *Wishnatsky v. Rovner*, 433

2

F.3d 608, 610 (8th Cir. 2006). And despite the permissibility of considering matters "embraced" by the pleadings in such a motion, a court cannot consider matters, such as evidence adduced through discovery, which are outside the pleadings, without converting the motion into one for summary judgment. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). "[W]ritten or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings" falls outside the pleadings and may not be considered. *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992).

## IV.  ARGUMENT

A.  *The messages Plaintiff received were "telephone solicitations" and violated the TCPA.*

The Plaintiff received telephone solicitations. The TCPA defines the term "telephone solicitation" to include "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(15). The TCPA analysis for determining whether a communication constitutes a "solicitation" focuses primarily on the defendant's purpose and intent for initiating the communication, not the contents of the communications themselves. *See Abboud v. Circle K Stores Inc.*, No. 2:23-cv-01683, 2025 WL 307039, at *6 (D. Ariz. Jan. 27, 2025) ("At bottom, whether the text messages qualify as 'telephone solicitations' turns on Defendant's purpose in causing the messages to be sent."); *Whittaker v. Freeway Ins. Servs. Am., LLC*, No. 3:22-cv-08042, 2023 WL 167040, at *2 (D. Ariz. Jan. 12, 2023) ("It is the purpose behind a call that controls, not what happened during the call.") (cleaned up); *Friedman v. Torchmark Corp.*, No. 3:12-cv-02837, 2013 WL 4102201, at *6 (S.D. Cal. Aug. 13, 2013) ("The Court must determine whether the intent of the call is to offer property, goods, or services for sale during the call or in the future."). While the message content may be *indicative* of purpose, it is nevertheless not dispositive of the message's purpose, a critical distinction for

3

purposes of applying the judgment on the pleadings standard here. *Golan v. Veritas Ent., LLC*, 788 F.3d 814, 820 (8th Cir. 2015) (holding that, to discern a caller's purpose, the Court must consider both the content of the call as well as its context). The inquiry also demands "a measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

The offering of contingent services for which no monetary outlay is required still constitutes a "solicitation" under the TCPA. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 209-210 (S.D.N.Y. 2024) (cleaned up). In *Cacho*, as here, the plaintiff sued a law firm for soliciting him to represent him in a Camp Lejeune claim on a contingency basis. In holding that such communications were telephone solicitations prohibited by the TCPA, the court remarked:

> Defendant argues that the complaint fails to state a claim under the TCPA because "Plaintiff does not allege that the [challenged] calls were to encourage the purchase of services." Defendant stresses that, when Plaintiff engaged the callers, he received a "retainer agreement [that] was on a contingency basis" so "he was not asked to pay for anything." Plaintiff responds that "Defendant did not offer their services to Plaintiff for free" since "Plaintiff was purchasing the legal services of Defendant" regardless of "[w]hether Plaintiff paid upfront, made payments periodically, or paid pursuant to a settlement (on contingency)." As stated above, the FCC regulations at issue impose restrictions on those engaged in "telephone solicitation[s]," 47 C.F.R. § 64.1200(c)(2), and "call[s] for telemarketing purposes," 47 C.F.R. § 64.1200(d). Those regulations clarify that "telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," 47 C.F.R. § 64.1200(f)(15); *accord* 47 U.S.C. § 227(a)(4), and likewise that "telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," 47 C.F.R. § 64.1200(f)(13). . . . Defendant's offer to represent Plaintiff clearly qualifies as an offer of services. The plain meaning and common usage of the term 'service,' includes professional services, such as legal representation and advice. . . . Although the representation agreement did not require Plaintiff to pay monies directly to Defendant, the Court must apply "common sense" rather than rigid formalism to decide whether the calls sought to encourage a purchase of services. Looking to the substance of the fee arrangement, the Court determines that this is not the "rare case" in which a call touts services that are entirely free of charge. . . . Even if an attorney provides legal services pursuant to a "contingent-fee agreement[,]" the client retains "the ultimate authority to control his affairs; thus, he may settle a claim, regardless of his attorney's efforts to prosecute it."

4

Here, Defendant's messages were aimed at getting the Plaintiff to sign a "claim form" for a RoundUp weedkiller mass tort claim. Notably, the very "claim form" itself that the Defendant was supposedly reaching out to get the Plaintiff to sign was not produced in the pleadings and has not even been produced in discovery. Nevertheless, the Plaintiff alleges that the form would have been "sent in an effort to get the Plaintiff to sign up with OnderLaw to obtain their representation in Roundup mass tort litigation," (Compl. ¶ 28), and, if signed, would have allowed OnderLaw to negotiate the claim in order to secure a settlement, for which OnderLaw would receive a contingent fee. As such, by encouraging the Plaintiff to sign a form that would secure payment in the negotiation and settlement process, the Defendant was encouraging the Plaintiff to purchase and invest in its legal services. To suggest otherwise is too clever by half. This is providing a service under the TCPA. *Cacho*, 739 F. Supp. 3d at 209 ("[T]he challenged calls allegedly sought to encourage *Plaintiff* to contract with Defendant and to direct a portion of a future right to payment to Defendant. While those funds would originate from a third party, the calls urged the relevant decisionmaker-namely, Plaintiff-to allocate those funds.").

> As the Court explained in *Circle K*:
>
> According to the FAC, the texts "advise[d] Plaintiff to reply 'YES' to sign up to 'receive special offers' and to 'get offers' from Defendant," the second and third messages included a link to Defendant's website, and "Defendant's sole business is the sale of goods at its convenience stores" These facts make it plausible that the purpose of the text messages was to encourage Plaintiff to sign up to receive offers for future shopping at Circle K. . . . Although the messages did not expressly seek to induce Plaintiff to purchase a particular product, it is difficult to imagine why Defendant would repeatedly encourage her to sign up for offers other than to encourage her to make future purchases of goods at Defendant's stores based on those offers. . . . The language in the second and third text messages directing Plaintiff to "[g]o to" Defendant's website further supports Plaintiff's contention that the messages qualify as telephone solicitations, as the website includes graphics about the products Defendant sells and information about Defendant's rewards program.

731 F. Supp. 3d at 1103-04. So too here, as it is difficult to imagine any other reason why

5

Defendant would be so insistent on contacting them and signing a document, unless the non-signing would mean that the Defendant would not represent the person, including in settlement negotiations, and by extension, would not get paid.

Nor is it any matter that the messages sent here were (allegedly) sought to encourage a retained client to *continue* doing business with the Defendant, a fact which is disputed and appears nowhere in the pleadings or any materials embraced therein. For starters, this is a variation of the defendant law firm's argument in *Cacho*, that "the connection between the calls and the representation agreement was too attenuated because none of the calls directly mentioned Defendant's legal services." *Cacho*, 739 F. Supp. 3d at 211. As the Court remarked, that's not what the law requires: "[A] caller need only 'encourag[e]' the recipient to purchase a service to fall under the relevant regulations. . . . The fact that a sale is not completed during the call or message does not mean the message does not constitute a telephone solicitation or unsolicited advertisement." *Id.* (cleaned up). In any event, as the Court in *Circle K* has observed, it is hard to imagine any other reason why the messages would be sent other than to encourage a future "purchase" or rather, continuation of a relationship that would ultimately result in a contingent payment to OnderLaw through settlement or judgment.

This argument is also analogous to one the Ninth Circuit considered, and rejected, in *Chesbro*. There, the defendant sent calls to the Plaintiff to "remind you that your Reward Certificates are about to expire," and encouraged them to redeem the certificate. *Chesbro*, 705 F.3d at 916. This is nearly identical to the situation here as discerned from the pleadings, where the communications sought to remind the Plaintiff about a RoundUp claim and encouraged further action in furtherance thereof, resulting in OnderLaw getting paid. Indeed, as OnderLaw operates under a contingent fee agreement, it only stands a chance of getting a payout if all case

6

documents are signed and completed and does not withdraw. As the Ninth Circuit held, this conduct fell within the broad definition of a telephone solicitation under the law:

> Best Buy argues that its calls were purely informational courtesy calls to RZ members. It further maintains that, because the scripts did not explicitly reference any property, goods, or services within the meaning of 47 U.S.C. § 227(a)(5), the calls did not run afoul of the TCPA and its implementing regulations. We disagree.
>
> We approach the problem with a measure of common sense. The robot-calls urged the listener to "redeem" his Reward Zone points, directed him to a website where he could further engage with the RZP, and thanked him for "shopping at Best Buy." Redeeming Reward Zone points required going to a Best Buy store and making further purchases of Best Buy's goods. There was no other use for the Reward Zone points. Thus, the calls encouraged the listener to make future purchases at Best Buy. Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context. Any additional information provided in the calls does not inoculate them.

*Id.* at 918. Just as here, the calls urged the recipient to sign documents in furtherance of legal representation and thanked the Plaintiff. There would be no other use for signing the documents other than for OnderLaw's representation. Thus, even viewed under OnderLaw's theory, the calls still encouraged the recipient to utilize OnderLaw for its legal services. And, as here, "Any assertion that the calls were not 'unsolicited advertisements' because the statutory definition of that term excludes communications made with the recipient's 'prior express invitation or permission' is unsupported by the record, which shows, instead, that Chesbro repeatedly asked *not* to be called." *Id.*

At best, this Court can characterize the subject communications as a so-called "dual purpose" call, "calls with a customer service element or informational component as well as a marketing component, which are prohibited under the TCPA." *Alleman v. Yellowbook*, No. 12-CV-1300-DRH-PMF, 2013 WL 4782217, at *4 (S.D. Ill. Sept. 6, 2013). As the Federal Communications Commission has remarked, such calls "may inquire about a customer's satisfaction with a product already purchased, but are motivated in part by the desire to

7

ultimately sell additional goods or services. If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement." *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14098 (2003). The calls still constitute telephone solicitations. "Even when the intended content of a message is not conveyed, the intrusion into the home and the 'seizure' of the phone line is the same. *Golan*, 788 F.3d at 820. And as in *Golan*, in which a telemarketing call was masquerading as a survey call:

> Here, the context of the calls indicates that they were initiated for the purpose of promoting Last Ounce of Courage. . . . Although the campaign appeared to survey whether recipients had "traditional American values," Griffin and Joseph were "more concerned with getting viewers to see Last Ounce of Courage than gathering information about them." . . . Since the calls were initiated and transmitted to the Golans in order to promote Last Ounce of Courage, they qualified as "telemarketing" even though the messages never referenced the film.

*Id.*

It is also notable that communications which encourage the called party to complete a purchase are still prohibited "telephone solicitations" under the TCPA, as are calls directed to encourage former customers to come back. *See, e.g.*, *Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075, at *2 (D. Md. June 6, 2024) (holding so-called "winback" calls violated TCPA); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1115 (9th Cir. 2022) (describing campaign that was "designed to entice former promoters and customers to return to or reactivate their ViSalus memberships by offering promotional pricing on ViSalus products"); *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 824 (C.D. Ill. 2017) (describing telemarketing campaign where former customers were periodically called to get them to sign up); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *2 (W.D. Wash. May 25, 2016) (same); *Williams v. Pisa Grp., Inc.*, No. CV 18-4752, 2023 WL 2227697, at *3 (E.D. Pa. Feb. 24, 2023) (certifying similar class).

The fundamental conclusion and analysis must be of whether the call has a "commercial nexus." Any way the content of the message is sliced, the Court can draw the inference that the communications were not purely informational but were rather sent in furtherance of obtaining OnderLaw's contingent fee for a roundup claim. *Hill v. InvestorPlace Media, LLC*, No. 523CV00111KDBDCK, 2024 WL 1056030, at *4 (W.D.N.C. Mar. 11, 2024). That is not a free product or service that does not count as a solicitation. Indeed, this case is very similar to *McMorrow v. Core Properties, LLC*, 2023 WL 8697795 (E.D. Mo. Dec. 15, 2023). There, this Court rejected the defendant's argument that because a defendant would only collect an effective fee at the time of sale, the messages sent to encourage use of their services was not a telephone solicitation. *Id.* at *7. This Court simply cannot credit, under the applicable standard here, the Defendant's conclusory statement, unsupported by analysis and citation to applicable case law, that the calls were not telephone solicitations prohibited by the TCPA, especially given the Eighth Circuit's mandate in *Golan* that courts must consider both content and context.

The authorities cited by the Defendant are distinguishable. For example, in *Suriano v. French Riviera Health Spa, Inc.*, No. CV 18-9141, 2018 WL 6702749, at *3 (E.D. La. Dec. 20, 2018), the Court held that the subject communications *were* advertisements but that they were not actionable because the *plaintiff had consented because he was a customer of the defendant*. That is plainly not the case here, as it is undisputed that the Plaintiff had no dealings with OnderLaw. So too in *Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV-03546-WHO, 2015 WL 7454260, at *4 (N.D. Cal. Nov. 24, 2015), where the plaintiff himself had signed up for a loyalty program in the defendant's store and received a confirmatory sign-up text that did not encourage him to do anything, unlike here, where the messages were sent to ask the Plaintiff to sign a document necessary to a RoundUp claim, and, by extension, OnderLaw's compensation. For

9

what it's worth, the *Daniel* court's holding is expressly contrary to the Eighth Circuit's binding precedent in *Golan* and held that content alone can be dispositive of a message's purpose. This Court is bound to follow *Golan*, which mandates an analysis of *content* as well as *context*, including the sender's intent, an analysis this Court cannot conduct under the Rule 12(c) standard. *Golan*, 788 F.3d at 820. In any event, its reasoning has also been disagreed with by other Ninth Circuit courts. *See Abboud*, 2025 WL 307039, at *10 (D. Ariz. Jan. 27, 2025). And *Dolemba* is of little use either: the calls there were sent to encourage attendance at a free seminar, as this very court distinguished from the contingent services offered here in *McMorrow.*

Nor does *Car2go* help the Defendant either. As an initial matter, that case "was decided under a prior version of 47 C.F.R. § 64.1200, and the opinion does not specifically refer to the regulation's definition of "telemarketing."'" *Daniel*, 2015 WL 7454260, at *4. Even so, in that case, like in *Daniel*, the message was sent with consent, unlike here, and was merely a registration text message, not one that encouraged him to purchase anything or, as here, continue the process so that a purchase of legal services could be made and consummated in the form of a settlement for which Defendant would receive a contingent fee. *Aderhold v. Car2go N.A., LLC*, No. C13-489RAJ, 2014 WL 794802, at *8-*9 (W.D. Wash. Feb. 27, 2014), aff'd, 668 F. App'x 795 (9th Cir. 2016). Unlike in *Car2go*, and like in *Chesbro* and the line of other citations cited above, including *Wakefield*, the communications at issue here were implicitly an exhortation to, if not make future purchases, at the very least continue or rekindle a commercial business relationship through representation that would eventually allow OnderLaw to collect its contingent fee. *Id.* The Plaintiff is not simply being asked to complete the sign up for a service she had already indicated her interest in. At bottom, this Court should have no trouble concluding that the subject messages were telephone solicitations prohibited by the TCPA.

10

B.  *Material facts regarding the purpose of the messages are disputed, and so judgment on the pleadings is not appropriate at this stage.*

Second, this Court should deny the Defendant's motion on at least two procedural grounds. First, as the Eighth Circuit remarked in *Golan*, determining whether a communication is an impermissible telephone solicitation is a fact-intensive analysis that is, at best, determinable at summary judgment. This is because, under the binding authority in *Golan*, this Court must consider both the context of the messages as well as their context in order to determine if they are solicitations. *Golan*, 788 F.3d at 820. This is also important because there is no wrong number or "intended recipient" defense to the TCPA. *N.L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020); *Abboud*, 2025 WL 307039, at *10 (D. Ariz. Jan. 27, 2025). Those sorts of facts tending to show whether or not the calls were telephone solicitations are demonstrable though class discovery, not pleadings. In *Bradley v. DentalPlans.com*, for example, the Court granted class certification and held that the calls were telephone solicitations based partly on the scripts used by Defendant, noting that, "This script is used by DentalPlans for all incoming calls from non-customers, though the actual conversations vary naturally depending on the caller's response." No. CV 20-1094-BAH, 2024 WL 2865075, at *1 (D. Md. June 6, 2024); *accord Golan*, 2017 WL 2861671, at *10 (holding there was liability where Defendant drafted and edited telemarketing call script); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 787 (N.D.W. Va. 2017) (holding there was liability where company wrote telemarketing scripts for its telemarketing agents); *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1142 (W.D. Mo. 2020).

Relatedly, because fact-intensive questions exist, answering those questions will require the parties to conduct discovery into those factual questions, rendering a decision on what the Eight Circuit has already mandated this Court consider as a mixed question of law and fact, on

11

the facts pled here, inappropriate. Indeed, discovery has revealed additional facts which would tend to defeat the Defendant's motion, even at summary judgment, including the content of even more unpled text messages which consist of even more explicit content that constitutes a telephone solicitation, in addition to the document which would have been requested to be signed, which was not produced, as well as the Defendant's contingent fee agreement, which would show that the Defendant would obtain a recovery if the form was filled out, and thus demonstrating that the form was necessary to the continuation of a business relationship, and consequently, more money to the Defendant. Because these factual issues bear on disputed facts on which judgment on the pleadings is sought, including because they would answer the subjective analysis that the Eighth Circuit held that this Court is bound to conduct in *Golan*, judgment on the pleadings is inappropriate. Disputed factual questions exist and additional discovery related to them is necessary.

## V. CONCLUSION

This Court must deny Defendant's motion in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct any deficiencies or simply reserve the matter for discovery and jury trial.

RESPECTFULLY SUBMITTED AND DATED this July 14, 2025.

       s/Andrew Roman Perrong
Andrew Roman Perrong, E.D. Mo. No. 333687PA
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
a@perronglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, a copy of the foregoing was served electronically via CM/ECF.

                              */s/ Andrew Roman Perrong*

                              Andrew Roman Perrong, Esq.