**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| KIMBERLY HUDSON-BRYANT,<br><br>Plaintiff,<br><br>v.<br><br>ONDERLAW, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 4:25-cv-244 |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant OnderLaw, LLC ("OnderLaw"), pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, submits the following Reply in support of its Motion for Judgment on the Pleadings.

## I. Introduction

Plaintiff's Response in Opposition to Defendant's Motion for Judgment on the Pleadings ("Response") rests on speculation and impermissible references to facts outside the pleadings. Her attempt to convert routine client-related correspondence into a telemarketing scheme ignores both the content of the alleged messages and binding precedent. The allegations and embedded communications in Plaintiff's Complaint make clear that OnderLaw's communications fall outside the scope of the TCPA. No plausible TCPA claim exists where, as here, the communications neither advertise nor solicit services. Judgment on the pleadings is proper.

## II. Legal Standard

Plaintiff's Response acknowledges the legal standard set forth in OnderLaw's Motion for Judgment on the Pleadings.

## III. Argument

A ‘telephone solicitation’ is “the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . .” 47 U.S.C. § 227(a)(4). To discern a caller’s purpose, the court must consider both the content of the call as well as its context. See *Golan v. Veritas Ent., LLC,* 788 F.3d 814, 820 (8th Cir. 2015). The Ninth Circuit has noted this inquiry demands “a measure of common sense.” *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). When considering both the content and context of OnderLaw’s communications to Plaintiff, it is common sense that these messages were not telephone solicitations.

### A. The content and context of OnderLaw’s communications show they were not “telephone solicitations.”

OnderLaw’s retained Roundup client provided Plaintiff’s alleged telephone number to OnderLaw as the client’s point of contact. Answer, First Affirmative Defense; Third Affirmative Defense; Fourth Affirmative Defense; Fifth Affirmative Defense; Ninth Affirmative Defense; Twenty-First Affirmative Defense. OnderLaw’s employees contacted Plaintiff’s telephone number several times solely for the purpose of receiving a completed information form (the “Claim Form”). These messages were not sent to encourage Plaintiff to purchase OnderLaw’s services, which is obvious from both the content and context of the messages.

Plaintiff cites a multitude of cases she claims are similar to this case, but none of these cases support her position when applied to the actual allegations and facts here. Plaintiff’s proffered case law is unpersuasive, as is her imaginative theory that OnderLaw was trying to induce Plaintiff to retain the firm as a Roundup client, and in fact shows how OnderLaw’s communications were not “telephone solicitations” under the TCPA.

For example, this case is nothing like *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 209 (S.D.N.Y. 2024) cited by Plaintiff in her response. *Cacho* dealt with a law firm soliciting an individual to retain its services. There, plaintiff's number was registered on the Do Not Call Registry prior to receiving calls from the law firm. *Id*. at 198. Plaintiff received a phone call "from a man who identified himself as 'John' and asked plaintiff whether he or any of his family members had spent time at Camp Lejeune between 1953 and 1987 and suffered from a disease 'like cancer.'" *Id*. "Plaintiff informed the caller that he was on the Do Not Call Registry and told the caller not to contact him again." *Id*. Despite this, "[b]etween June 1 and July 20, 2023, Plaintiff received at least thirty-three more calls on his cellphone asking whether he or any family member had been to Camp Lejeune between 1953 and 1987 and suffered from a disease such as cancer." *Id*. After plaintiff continued to receive phone calls from the law firm, plaintiff played along with the next call and was eventually transferred to a partner at the defendant law firm, who eventually sent plaintiff a contingency compensation agreement. *Cacho*, 739 F. Supp. 3d at 198. The court determined the content and context of the calls was sufficient to establish their purpose was to encourage plaintiff to purchase defendant's legal services. *Id.* at 212.

The content and context of the *Cacho* communications are unlike the content and context of OnderLaw's communications. OnderLaw's first message (reproduced in Plaintiff's Complaint) to Plaintiff was sent August 11, 2022 and stated: "Reply YES to confirm your consent to receive OnderLaw SMS messages. Msg&Data Rates May Apply." Complaint, ¶ 21. On January 16, 2023, Plaintiff received another communication from OnderLaw that stated:

+13146495000
3:20 PM, Jan 16

Attn. Roundup Client - This is your OnderLaw Roundup Team. We have sent a critical document to the email we have on file for you, via DocuSign and Nick Williams, a member of our Client Communications Team. Please complete and submit this document as soon as possible. PLEASE COMPLETE ON A COMPUTER, LAPTOP, OR TABLET TO AVOID FORMATTING ISSUES. When the document is successfully submitted, you will receive another email from DocuSign with the completed PDF attached. We also receive a copy of this email.

If you have already completed the document in question, thank you and please disregard this message. Any questions, please call 314-373-4597 or email roundup@onderlaw.com.

*Id*. at ¶ 23. On May 4, 2023, OnderLaw's employee left a voicemail that stated "This is Cecilia with the OnderLaw Roundup Team. I'm calling regarding a critical claim form that we need you to complete. At your earliest convenience, please call us at 314-963-900. Thank you. Bye-bye." *Id*. at ¶ 26. On July 25, 2023, OnderLaw's employee left a second voicemail that stated: "Hi, this is Audrey with the Onder Law Firm. I'm calling in regards to a claim form that we sent you. If you could call me back at 314-292-5742, that would be great. Thanks." *Id*. at ¶ 27.

First, the content of these messages are unlike the content of the *Cacho* messages. There, the law firm asked plaintiff specific questions necessary to determine if plaintiff qualified for the Camp Lejeune litigation in order to get the individual to sign as a client of the firm. *Cacho*, 739 F. Supp. 3d at 198. Despite being told the plaintiff was not interested, the defendant contacted

plaintiff over thirty times in two months, with each communication including the case-specific questions necessary to determine if plaintiff was qualified to be retained as a Camp Lejeune client. *Id*. Here, it is undisputed that OnderLaw's communications did not address any case-specific questions determining if Plaintiff qualified to be retained as a Roundup client and allegedly sent 4 communications over the course of a year. Unlike the *Cacho* communications, OnderLaw's message referred to a "Roundup Client", referenced an "email we have on file for you" and only sought the return of a litigation document sent to a retained client. *Cacho* expressly emphasizes the importance of common sense to determine whether communications encouraged a purchase of services, yet Plaintiff's argument does the opposite. *Id*. at 210. The messages themselves prove OnderLaw was simply contacting a Roundup client regarding a litigation document on the number provided by the client, and common sense shows OnderLaw was not attempting to solicit Plaintiff as the law firm in *Cacho* did.

Plaintiff also cites *Abboud v. Circle K Stores Inc.*, No. 2:23-cv-01683, 2025 U.S. Dist. LEXIS 13605 (D. Ariz. Jan. 27, 2025), which further shows why OnderLaw's communications were not "telephone solicitations." There, the defendant gas station sent plaintiff four text messages after an unknown individual entered plaintiff's telephone number into defendant's system in order to receive a discount on their purchase. *Id*. at *5. Defendant sent four text messages to plaintiff as follows:

> • August 2, 2023: "Circle K: Reply 'YES' to Sign Up to receive special offers via txt message. Msg & Data rates may apply. Txt 'STOP' to Opt-Out. 855-276-1947."
> • August 2, 2023: "Circle K: Reply 'YES' to get offers via txt. Go to myck.site/k2KmEU, Age-verify 18/21+ offers. Msg & Data rates may apply. Txt 'STOP' to Opt-Out. 855-276-1947."
> • September 11, 2023: "Circle K: Reply 'YES' to get offers via txt. [*6] Go to myck.site/Qb9PtF, Age-verify 18/21+ offers. Msg & Data rates may apply. Txt 'STOP' to Opt-Out. 855-276-1947."

> • September 12, 2023: "Circle K: Opt-Out confirmed. Thank you for responding. Msg & Data rates may apply. To Sign Up in the future reply yes. 855-276-1947."

*Id*. at *5–6. The link in the text messages went to defendant's online age-restricted sign-up form, where viewers were prompted to enter their name, email address, physical address, and birthday. *Id*. at *6. The website contained hyperlinks to programs hosted on defendant's main webpage. *Id*. The *Abboud* court found a reasonable fact finder, using common sense and considering the context, could find the text messages promising "special offers" or "offers via text" were made for the purpose of encouraging plaintiff to make future purchases of defendant's products. 2025 U.S. Dist. LEXIS 13605 at *20–21. During oral argument, plaintiff's counsel conceded that "if the text messages had merely stated 'Circle K, reply yes to confirm the receipt of future text messages,' they would not run afoul of the TCPA." *Id*. at *22.

OnderLaw's communications were nothing like the *Abboud* defendant's communications. OnderLaw's communications did not contain links to or mention any OnderLaw website or documents; instead, the communications referenced a document sent to the Roundup client's email address already on file to get an existing client's approval of a claim form necessary for litigation. Additionally, OnderLaw's first communication was exactly what the *Abboud* plaintiff's counsel conceded was not afoul of the TCPA—it stated "Reply YES to confirm your consent to receive OnderLaw SMS messages. Msg&Data Rates May Apply." Complaint, ¶ 21. A reasonable fact finder using common sense would find OnderLaw's communications were not telephone solicitations.

Plaintiff's additional cited authority *McMorrow v. Core Properties, LLC*, 2023 U.S. Dist. LEXIS 223207 (E.D. Mo. Dec. 15, 2023) is also unsupportive of Plaintiff's speculations. There, the defendants—a real estate investment company and an intellectual property company—partnered with a third-party who performed data analytics to identify property owners likely to sell

their homes. *Id*. at *7–9. The defendants obtained plaintiff's contact information from the third party and directed another third-party, 1000 Calls a Day, to send four unprompted text messages to plaintiff's telephone inquiring about plaintiff's willingness to sell his real property for the purpose of encouraging plaintiff to purchase defendants' services in the sale. *Id*. at *10–11. Because the defendants' communications directly offered their services to plaintiff and defendants would collect revenue if plaintiff sold his home through defendants, the court determined the messages were "telephone solicitations" under the TCPA. *Id*. at *36.

OnderLaw's communications are unlike the communications sent by the *McMorrow* defendants. OnderLaw did not target Plaintiff through any third-party or data analytics; OnderLaw was provided Plaintiff's telephone number by its Roundup client—a fact which Plaintiff does not dispute. See Response, p. 1. Further, OnderLaw's communications contain no offer, no promotion, no call to action to purchase anything, and no language even remotely suggesting commercial advertising. Instead, these communications expressed that the firm sent a litigation document to the client that needed to be completed. It is common sense that attorney-client communications inadvertently sent to the wrong number do not somehow transform the communications into encouraging that individual to becoming a client. Plaintiff's desperate assertion that OnderLaw's communications were attempts to retain her as a client is not only factually unsupported, but also flatly contradicted by the messages she attached to the Complaint.

None of the cases cited by Plaintiff have any reference or resemblance to the facts of this case. The additional authorities like *Chesbro*, 705 F.3d at 916; *Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075 (D. Md. June 6, 2024); and *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1115 (9th Cir. 2022) involve direct marketing, promotional pricing, or loyalty programs encouraging future purchases—none of which occurred here. Further, any analogy to

"winback" or "reactivation" campaigns also fails. On the face of OnderLaw's communications, it is common sense these messages were not meant to re-engage a dormant client—they were litigation follow-ups to obtain an outstanding document on behalf of a represented client. Plaintiff's position that every communication from a contingency-fee law firm is a "telephone solicitation" because the firm only gets paid if the case is resolved is absurd. If accepted, it would turn nearly every status update, evidence request, or scheduling call from a lawyer into actionable telemarketing. That is not what the TCPA says, and the fact that Plaintiff could not find a case where communications such as OnderLaw's were deemed telemarketing or advertising is the death to Plaintiff's claims.

**B. Conducted discovery proves OnderLaw's communications were not "telephone solicitations."**

Even though Plaintiff correctly notes that discovery and other evidence are outside the court's purview when reviewing a motion for judgment on the pleading, Plaintiff improperly tries to rescue her meritless Complaint by introducing unpled allegations and citing to discovery commenced in this matter multiple times. *See* Response, pp. 1; 5; 6; 12. Plaintiff admits informal production proved OnderLaw's client "had the telephone number in approximately 2018, before the telephone number was assigned to the Plaintiff"—despite alleging in her Complaint that "Plaintiff's number has been on the National Do Not Call Registry since she registered it on the Registry on October 17, 2009, **well prior to receiving the text messages at issue."** *See* Response, p. 1; Dckt. 1, ¶ 19 (emphasis added). Plaintiff also discusses the additional text messages OnderLaw sent to its Roundup client and the contingent fee agreement that OnderLaw informally produced to Plaintiff on March 19, 2025. See Response, p. 1; 12. Plaintiff uses this discovery production as background to her baseless fantasy that OnderLaw was contacting a former Roundup client to entice her to re-sign with the firm in order to recover a settlement.

Despite Plaintiff's improper introduction of discovery into the record, Plaintiff omits OnderLaw's production of the Claim Form. "Notably, the very 'claim form' itself that the Defendant was supposedly reaching out to get the Plaintiff to sign was not produced in the pleadings and **has not even been produced in discovery**." Response, p. 5 (emphasis added). "Indeed, discovery has revealed additional facts which would tend to defeat the Defendant's motion, even at summary judgment, including the content of even more unpled text messages which consist of even more explicit content that constitutes a telephone solicitation, *in addition to the document which would have been requested to be signed, **which was not produced,*** as well as the Defendant's contingent fee agreement, which would show that the Defendant would obtain a recovery if the form was filled out, and thus demonstrating that the form was necessary to the continuation of a business relationship, and consequently, more money to the Defendant." Response, p. 12 (emphasis added). Plaintiff's blatant misrepresentations aside, OnderLaw produced the Claim Form to Plaintiff in its Initial Disclosures and again in its discovery responses. The Claim Form was completed by the Roundup client and is neither a retainer agreement nor a document for the Roundup client to retain OnderLaw's services. Instead, the Claim Form, on its face, proves what OnderLaw's Answer and Affirmative Defenses allege: OnderLaw was contacting a retained client regarding a litigation document on the phone number given by the client.

Plaintiff's repeated emphasis on the so-called "missing" Claim Form is a red herring. Despite receiving a copy of the Claim Form twice, Plaintiff has neither dismissed the case nor amended her claims to reflect its content, because doing so would confirm that OnderLaw's communications were not solicitations, but routine efforts to complete documentation for a retained client. It is no surprise Plaintiff improperly addresses additional text messages, documents

showing OnderLaw's Roundup client had the same telephone number as Plaintiff, and OnderLaw's contingent fee agreement in her Response, but misrepresents production of the Claim Form in question—because this document is dispositive of her claim and shows OnderLaw's communications were not "telephone solicitations."

## IV. Conclusion

Even taking the allegations of the Complaint as true and viewed in the light most favorable to Plaintiff, Plaintiff has failed to state a claim. The content and context of the communications sent by OnderLaw are discernable on the face of the pleadings. The undisputed content and context of the communications show the messages were not sent for advertising or telemarketing purposes and cannot be considered "telephone solicitations" under the TCPA. Even if other elements of Plaintiff's claim are disputed—including if Plaintiff's number is actually registered on the Do Not Call Registry[1]—the communications sent by OnderLaw were not "telephone solicitations" and Plaintiff cannot meet the elements necessary to state a claim. Plaintiff's claim therefore fails as a matter of law. This Court should enter judgment on the pleadings in favor of OnderLaw pursuant to Rule 12(c), and OnderLaw requests any other relief that the Court deems just and proper.

**ONDERLAW, LLC**

By */s/ Martin L. Daesch*

Martin L. Daesch, #40494
Kaitlin A. Carpenter, #74599
110 E. Lockwood
St. Louis, MO 63119
(314) 963-9000
(314) 963-1700 facsimile
daesch@onderlaw.com
carpenter@onderlaw.com
*Attorneys for Defendant*

[1] As addressed *supra*, Plaintiff originally pled she registered the telephone number on the Do Not Call Registry on October 17, 2009, but stated in her Response that she got the telephone number sometime after 2018.

**CERTIFICATE OF SERVICE**

The undersigned certifies the foregoing document was electronically filed with the Clerk of the Court, to be served by operation of the Court's electronic filing system upon all attorneys of record on this 7th day of August, 2025.

/s/ *Martin L. Daesch*__________